**Rickie DUFRENE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–91–01103–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

March 25, 1993.

Rehearing Denied June 3, 1993.

John Davis, Angleton, for appellant.

May Peter Cudd, Angleton, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

Appellant was found guilty by a jury of aggravated sexual assault of his own child. Punishment was assessed at confinement for life in the Texas Department of Criminal Justice—Institutional Division, and a ten thousand dollar fine. We affirm.

On February 1st, 1991, Dr. Vavich examined the complainant, a four-year old child, and concluded that she was "the victim of chronic and acute sexual abuse with multiple, chronic sexual penetrations, and thereby rape." Her vaginal area was "strikingly abnormal." She had a "very red entrance" and no hymen. Her opening was four times larger than normal, and her pelvic exam resembled that of an "adult, sexually active woman who'd had intercourse many times." Dr. Vavich noted that the bruising on her upper left thigh was consistent with someone holding a child down for the purpose of intercourse,

and that it was approximately three to four days old. Furthermore, he found evidence of "very recent sexual penetration with ejaculation." He questioned the child about what occurred. He asked her if her father had put his penis in her vaginal area, and she vigorously nodded her head "Yes."

■■■ Appellant contends in his second point of error that the child was not competent to testify. The standard for reviewing competency issues is abuse of discretion. *Reyna v. State*, 797 S.W.2d 189, 191 (Tex. App.—Corpus Christi 1990, no pet). This Court must review the **entire** testimony of the witness to determine if the trial court abused its discretion. *Id.*

■■■ The Texas Rules of Criminal Evidence create the presumption that a witness is competent to testify. Tex.R.Crim. Evid. 601; *Long v. State*, 770 S.W.2d 27, 29 (Tex.App.—Houston [14th Dist.] 1989), reversed on other grounds, 800 S.W.2d 545 (Tex.Crim.App.1990). A child is considered competent to testify unless it appears to the Court that she does not possess sufficient intellect to relate the transaction about which she will testify. *Long* at 29; *Reyna* at 191. The child no longer needs to understand the "obligation of the oath." *Long* at 29. The Court must simply impress on her mind the duty of being "truthful." *Gonzales v. State*, 748 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist] 1988, pet ref'd).

■■■ This child testified to her age, where she lived and where she went to school. She knew the difference between girls and boys, and that she was a little girl and the Appellant was a "boy." She knew that she once lived with Rick and Paula Dufrene, and that she now lived with Carol and Bob, her foster parents. The child knew that Rick Dufrene was her "dad" and that Paula Dufrene was her "mommy." Although she did not know what it was to tell the "truth," she did know what it meant to tell a "story." She demonstrated that she knew the difference between the truth and a "story" through the following colloquy:

Prosecutor: C——, okay, what color are your shoes?

The child: Black.

Prosecutor: If I told you your shoes were white, is that the truth or a story?

The child: A story.

Prosecutor: Okay ... Let the record reflect that the witness' shoes are black.

The Court: All right. It does.

Prosecutor: What color is this on your socks, then?

The child: White.

Prosecutor: Okay. Let the record reflect I pointed to the white portion of the witness' socks. If I told you ... that this sock right here, right here (indicating) was black, would that be the truth or a story?

The child: A story.

Prosecutor: Okay. What color is this right here (indicating) on your dress?

The child: Red.

Prosecutor: Let the record reflect I pointed to the red portion of her dress....

The Court: It does.

Prosecutor: If I told you that this red, here, (indicating), was black, is that the truth or a story?

The child: A story.

Prosecutor: Okay. What happens if you tell a story?

The child: You get a spanking.

Prosecutor: Is telling a story bad?

The child: Nodded head "yes."

The Court reminded the child that if she told a story in court, she would get a spanking. The judge then asked her if she was going to get a spanking today, and the child responded, "No."

■■■ In reviewing the child's direct testimony, three elements must be considered:

(1) the competency of the child to observe intelligently the events in question at the time of their occurrence;

(2) the capacity of the child to recollect the events; and

(3) the capacity of the child to narrate the events.

*Reyna* at 191–192.

During her closed circuit testimony, the child correctly identified all parts of the anatomically correct dolls which she was asked to identify. She used the dolls to show that the Appellant's penis went all the way in her vaginal area. She testified that it "hurt" when it went in, and that there was blood on her "patty-cake." She told the jury that she asked the Appellant to stop because it hurt, but that he did not stop, and that he told her she would "get in trouble" if she ever told. She testified that the Appellant did this to her "bunches of times." She stated both on direct and cross examination that no one else ever put "their dick in her patty-cake." She told the jury that the rape occurred on "Momma Paula's" bed while her mother was "cleaning up." Most importantly, she told the jury that it was definitely Rick Dufrene who raped her. During her direct examination, the child was asked that if she saw Rick Dufrene on the TV screen to get up and point to him. The child took the prosecutor's finger and pointed to the Appellant on the screen. The prosecutor then asked that "the Record reflect she's pointing to the Defendant, Rick Dufrene, on the screen." The Court noted, "It does." Appellant did not object.

■ In reviewing all of the testimony, we find that the child was competent to recollect and narrate the events in question. Although her testimony does contain conflicting and sometimes confusing answers, that does not, in itself, make her an incompetent witness. *Macias v. State*, 776 S.W.2d 255, 257 (Tex.App.—San Antonio 1989, pet ref'd). In light of *Macias, Long, Reyna* and *Gonzales*, we hold that the trial court did not abuse its discretion in finding the child competent to testify. Appellant's second point of error is overruled.

In his first point of error, Appellant contends that the evidence is insufficient to sustain his conviction. Appellant concedes that the evidence is "sufficient to show that at some point or points in time during the child's life, Appellant committed the offense of aggravated assault against this child." [1] He maintains, however, that Ms. Simmons' testimony established the date of the incident as January 20, 1991, and that the State was bound to prove that the child was raped on the day Ms. Simmons was in Appellant's home.

■ Various acts of sexual misconduct committed over a period of time do not comprise a *single* offense under Texas law. Persons who commit multiple assaults against the same victim are liable for separate prosecution and punishment for each instance of abuse. *Vernon v. State*, 841 S.W.2d 407 (Tex.Crim.App.1992). The State must allege and prove a specific, single transaction. *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App.1988). However, the State is not bound to prove a specific *date*. *Scoggan v. State*, 799 S.W.2d 679, 680 (Tex.Crim.App.1990); *Wilson v. State*, 730 S.W.2d 438, 443 (Tex. App.—Fort Worth 1987, pet. ref'd.). The State may prove that the offense was committed before, on, or after the date alleged in the indictment, so long as the offense was committed *before* the return of the indictment and *within* the statute of limitations. *Scoggan* at 680. Appellant concedes that the date alleged is "immaterial." [2]

■ In order for evidence to be sufficient for a conviction, a rational trier of fact must be able to find all of the essential elements of the crime beyond a reasonable doubt. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Williams v. State*, 826 S.W.2d 783 (Tex.App.—Houston [14th Dist] 1992, pet ref'd). The essential elements of this crime are that the Appellant, without consent, intentionally and knowingly caused his sexual organ to contact the female sexual organ of the complainant, a child younger than fourteen and not his spouse.[3]

1. Appellant's brief, p. 11.

2. Appellant's brief, p. 11.

3. TEX.PENAL CODE ANN. § 22.021 (Vernon 1989).

We find that the child's testimony establishes a single incident. She testified that it was the Appellant who raped her, in her mother's room, while her mother was "cleaning up." She could not attach a "date" to this incident due to her young age. She asked him to stop and told him that it hurt, but he would not stop. Dr. Vavich's testimony confirms that the child had been severely raped, and that her bruises were four days old. He examined her on February 1, 1991. He noted that the little girl was only four years-old, and that she told him it was her father who had raped her. Ms. Simmons testimony established that on January 20, 1991 the child's vaginal area was red and chaffed. She saw approximately twelve pairs of the child's dirty panties in the laundry room, which the mother told her were the result of a single day's use. Ms. Simmons testified that she heard the child scream out when the Appellant entered the child's bedroom alone. We find that a rational trier of fact could have found the Appellant guilty of aggravated sexual assault against this child, as alleged in the indictment. We overrule the first point of error.

In his third point of error, Appellant contends that his Sixth Amendment right to confrontation was violated because the evidence does not support the findings necessary for the child to testify via a closed circuit television system. Appellant specifically objects to Findings numbers 5 and 8, and Conclusion number 2, as set out in the Court's Findings of Fact & Conclusions of Law.

Findings 5 and 8 state:

(5) The child C—— D—— would very likely be traumatized in the physical presence of the defendant Rickie Dufrene. The child C—— D—— would be traumatized by a face-to-face confrontation with the defendant and not by the courtroom or the courtroom procedures generally.

(8) The child C—— D—— is more likely than not to be unavailable to testify since the child would suffer undue psychological harm in a face-to-face confrontation with the defendant Rickie Dufrene.

Conclusion of Law number 2 states:

The child victim-witness C—— D—— is unavailable to testify at the trial of this cause.

In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the United States Supreme Court held that a defendant's Sixth Amendment right to face-to-face confrontation can give way to the State's interest in protecting the welfare of children. If the State "makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying ... is sufficiently important to justify the use of a special procedure that permits the child ... to testify at trial against the defendant in the absence of face-to-face confrontation with the defendant." *Id.* 497 U.S. at 855, 110 S.Ct. at 3168–3169. The Texas Court of Criminal Appeals has interpreted *Craig* to mean that:

... before a trial court is allowed to utilize a closed-circuit system of transmitting a child's testimony into the courtroom, the court must hear evidence and make a case-specific determination that:

First, [the] use of the ... procedure is necessary to protect the welfare of the ... child;

Second ... the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant; and

Third ... the emotional distress suffered by the child ... in the presence of the defendant is ... more than mere nervousness or excitement or some reluctance to testify.

*Hightower v. State*, 822 S.W.2d 48, 51 (Tex. Crim.App.1991), citing *Gonzales v. State*, 818 S.W.2d 756, 762 (Tex.Crim.App.1991). "If the trial court makes these findings, then the Confrontation Clause does not prohibit the use of [the] procedure." *Hightower*, citing *Gonzales*.

The trial court made specific findings in this case that the closed-circuit procedure was necessary to protect the welfare of the

child;[4] that the child would be traumatized by the presence of the defendant, and not by the courtroom generally;[5] and that the emotional distress suffered by the child would be more than mere nervousness.[6]

These findings are supported by the testimony of Dr. Paul Malone. He testified that the source of the child's trauma in testifying would be the presence of the Appellant.

> Prosecutor: Dr. Malone, assume with me that the child C—— was brought in a courtroom as we are, today, and the defendant Rick Dufrene was physically present in that courtroom. Do you have an opinion as to what the physical presence of the defendant Rick Dufrene, in C—— D——'s presence would do or not do to C——?
>
> Doctor: It very likely would traumatize her further.
>
> Prosecutor: Have you been able, from your conversations with C——, to identify the source of her trauma?
>
> Doctor: The treatment of her by her parent figures, Rick and Paula Dufrene.
>
> Prosecutor: What effect, if any, do you think it would have on the child ... for her to testify in the physical presence of Rick Dufrene?
>
> Doctor: I think she's at greater risk for further traumatization ... If she's now exposed, with work having been done to get distance between her and her parent figures ... it will likely traumatize her.... There's going to be the traumatic experience from being exposed to Rick Dufrene.

Dr. Malone continually noted that this child had been *severely* sexually and emotionally abused. He believed that she would be further traumatized if forced to testify in the presence of the Appellant, and that she could suffer long-term psychological harm from a face-to-face confrontation with the Appellant. He noted that the closed-circuit system would help psychologically distance the child from the Appellant. We hold that

the trial court's findings are supported by the evidence. We overrule Appellant's third point of error.

In his final point, Appellant claims that trial court's finding of "unavailability," as required by TEX.CODE CRIM.PROC. article 38.071, is unsupported by the record.

Article 38.071 is the Texas statute allowing for child-victims to testify by closed circuit television. It provides that in making a determination of unavailability, the Court may consider the relationship of the defendant to the child, and the duration of the abuse. Further, the Court may consider the age, maturity and emotional stability of the child, the time elapsed since the offense, and whether the child is more likely than not to be unavailable to testify because of emotional or physical causes, including *confrontation with the defendant,* or psychological or physical harm by being involved in such an emotional and traumatic trial.

Dr. Malone found that the child would be traumatized by a face-to-face confrontation with the Appellant. The entirety of his testimony supports a finding of unavailability. We hold that this finding does not violate Article 38.071. Appellant's fourth point of error is overruled.

The judgment is affirmed.

---

**4.** Finding of Fact number 9, and Conclusion of Law number 1.

**5.** Findings of Fact numbers 5 and 8, and Conclusion of Law number 2.

**6.** Findings of Fact numbers 4, 6 and 8.