**Affirmed; Opinion Filed August 6, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00499-CR

### SHAWN BRADEN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 15-30110-86-F**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Myers

A jury convicted appellant Shawn Braden of aggravated sexual assault of a child and assessed punishment at 25 years' imprisonment. Appellant brings two issues, contending the trial court erred in permitting a second outcry witness to testify and in finding the child complainant was competent to testify. We affirm.

### DISCUSSION

### 1. Second Outcry Witness

In his first issue, appellant contends the trial court erred in permitting the forensic interviewer, Tracy Ramirez, to testify as a second outcry witness when she allegedly provided testimony regarding the same event as the first outcry witness, Kristi Hoggatt, the child's grandmother. Appellant argues that this violated article 38.072 of the Texas Code of Criminal Procedure. Article 38.072 provides that in the prosecution of certain offenses committed against

a child younger than 14 years of age, including aggravated sexual assault of a child, a complainant's out-of-court hearsay statement can be admitted into evidence if the statement describes the charged offense and is offered by the first adult other than the defendant to whom the child described the offense— commonly known as the outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072; TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B) (aggravated sexual assault of a child); *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

Appellant was charged with aggravated sexual assault of a child younger than six years of age. As amended, the indictment alleged that appellant intentionally or knowingly caused the penetration of the mouth of the child, who was younger than six years of age, by appellant's sexual organ; and that appellant intentionally or knowingly caused the mouth of the child, who was younger than six years of age, to contact the sexual organ of the defendant.

Two outcry witnesses testified—Hoggatt and Ramirez. Appellant filed a pretrial motion based on article 38.072 to determine the admissibility of the outcry statements. Prior to the first trial of this case, which took place in October of 2016, the trial court held article 38.072 hearings for each outcry witness to determine the reliability of the outcry statements. Appellant's argument against the admissibility of the child's outcry to Ramirez was that it was not reliable. The court ruled that the child's outcry to Ramirez was reliable based on the time, content, and circumstances of the statement. The trial court also ruled, however, that it would limit Ramirez's testimony to the element of penetration because the child's outcry to Hoggatt did not include that element. Appellant did not ask for a running objection.

At the April 2017 retrial of this case, Hoggatt testified before the jury that on the morning of February 2, 2015, the child told her that appellant "shook his weenie." The child also made accompanying hand gestures. The child said appellant "kept trying to put it her mouth." The child added that this did not hurt her, her mother was not at home at the time, and that when appellant

did this she "ran and got under the covers."

Ramirez testified, in part, that the child told her appellant "had put his pee pee thing in her mouth," and the child identified the "pee pee thing" as appellant's penis. The child told Ramirez that appellant "was doing stuff like getting naked and taking a shower and he let me in the room and he pulled the curtain. He put it in my mouth in the shower and that's how I got sick." In addition, the child told Ramirez that appellant's penis hurt her teeth, and the child demonstrated this by putting her finger in her mouth and "kind of" moving her finger from side to side. The child also provided sensory details regarding how appellant's penis looked and smelled. Appellant did not object to this testimony.

On cross-examination, Ramirez testified that the child said appellant showed her his penis and tried to put it in her mouth, but the child ran away. Ramirez also testified on cross-examination that she asked the child whether appellant put his penis in her mouth, and she shook her head and said, "No, he says he was but he didn't." Ramirez further testified that she did not view those statements as conflicting with the child's other statements about penetration because the child told her the sexual encounters happened multiple times and the child may have been talking about different occasions when appellant did or did not put his penis in her mouth.

Arlene Meadows, the sexual assault nurse examiner, testified that she examined the child on the day of her first outcry, February 2, 2015. The child—three years old at the time of the examination—told her appellant had "tried to put the thing that he goes pee pee with in her mouth." The child said she ran away and hid under a toy table. The child also said that appellant wanted to kiss her. The child told Meadows that appellant exposed himself to her several times. The child did not indicate that there had been any penetration or physical contact. Appellant did not object to this testimony.

Appellant's complaint is that two outcry witnesses were erroneously permitted to testify

–3–

regarding one event. He argues that only one outcry witness can be permitted to testify about a specific event and that the testimony from Ramirez was inadmissible because it explicitly dealt with the same event as the testimony from Hoggatt and the sexual assault nurse examiner. Thus, according to appellant, Ramirez could not have been the first adult to whom the child made a statement about the offense, as required by article 38.072. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. At trial, however, appellant did not raise this complaint or make this argument. His only objection to Ramirez's testimony was that the child's statement to Ramirez was not reliable. *See id*. § 2(b)(2) (statement is not inadmissible hearsay if trial court finds, in a hearing held outside the presence of the jury, that it is reliable based on time, content, and circumstances of the statement). In his pretrial motion requesting the article 38.072 hearing, appellant argued that "[b]ased on the time, content, and circumstances of the statement, the said statement is not reliable and should be suppressed." Likewise, at the article 38.072 hearing, appellant argued that the child's statement to Ramirez was unreliable, claiming the State had "not been able to establish that the statement is reliable based on the time, specifically the content and the circumstances of the statement."

To preserve a complaint for appellate review, a party must object and state the specific grounds for the objection. *See* TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). The argument raised on appeal must comport with the objection made at trial, or error is not preserved. *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014); *Gutierrez v. State*, No. 05–16–00552–CR, 2017 WL 6616631, at *2 (Tex. App.—Dallas Dec. 28, 2017, no pet.) (mem. op, not designated for publication). Appellant's reliability objection did not preserve error regarding whether the complained-of testimony complied with the requirement of article 38.072 that the outcry witness must be the first adult to whom the outcry is made. *See* TEX. R. APP. P. 33.1(a); *Davis v. State*, No. 14–08–00985–CR, 2010 WL 2573813, at *2–3 (Tex. App.—Houston [14th Dist.] June 29, 2010, pet. ref'd) (mem. op., not designated for

publication) (appellant's reliability objection to witness's outcry testimony did not preserve error regarding whether witness was first adult to whom outcry was made); *see also Martinez v. State*, 822 S.W.2d 276, 278 (Tex. App.—Corpus Christi 1991, no pet.) (where appellant failed to complain at trial that outcry witness was not first person over 18 to whom the child described the incident, issue was not preserved for appeal); *Duncan v. State*, Nos. 01–11–00900–CR, 01–11–00901–CR, 2012 WL 6097455, at * (Tex. App.—Houston [1st Dist.] Dec. 6, 2012, no pet.) (mem. op., not designated for publication) (argument that trial court erred in admitting testimony under article 38.072 did not comport with objections made at trial) (citing *Davis*, 2010 WL 2573813, at *2–3).

Additionally, we note that appellant did not object to Ramirez's trial testimony. We have previously stated that to preserve error on the ground that a witness improperly testified as an outcry witness, a defendant must timely and specifically object and, unless allowed a running objection, must continue to object each time the witness offers the improper outcry testimony. *See Ogg v. State*, No. 05–04–00840–CR, 2005 WL 1654600, at *2 (Tex. App.—Dallas July 15, 2005, no pet.) (not designated for publication) (citing TEX. R. APP. P. 33.1; *Beckham v. State*, 29 S.W.3d 148, 153–54 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)); *see also State v. Kaiser*, 822 S.W.2d 697, 702 (Tex. App.—Fort Worth 1991, pet. ref'd) ("[A] preliminary ruling on the admissibility of evidence pursuant to article 38.072 will not preserve error for appeal—there must be a timely, specific objection proffered at trial."); *but see Pair v. State*, No. 02–13–00406–CR, 2014 WL 5878116, at *2 (Tex. App.—Fort Worth, Nov. 13, 2014, pet. ref'd) (mem. op., not designated for publication) (although appellant did not object to outcry testimony before the jury, appellant's article 38.072 objection at pre-trial hearing was sufficient to preserve his complaint for appeal). Similarly, in this case appellant's only objection to Ramirez's outcry testimony was made prior to any testimony concerning the outcry. When Ramirez testified about the child's outcry,

appellant did not object. Nor did appellant request a running objection. Accordingly, he failed to preserve his complaint for appellate review, and we overrule appellant's first issue.

## 2. Competency of the Child Complainant to Testify

In his second issue, appellant argues the trial court erred in finding the child complainant was competent to testify.

A trial court's determination of whether a child witness is competent to testify will not be disturbed on appeal absent an abuse of discretion. *Torres v. State*, 424 S.W.3d 245, 254 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd.); *Dufrene v. State*, 853 S.W.2d 86, 88 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). An appellate court must review the child's entire testimony to determine if the trial court abused its discretion. *Torres*, 424 S.W.3d at 254. A trial court does not abuse its discretion if its ruling was within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Torres*, 424 S.W.3d at 254.

As a general rule, a witness is presumed to be competent to testify. TEX. R. EVID. 601; *Dufrene*, 853 S.W.2d at 88. A child is not competent to testify when, after an examination by the trial court, the child does not appear "to possess sufficient intellect to relate transactions with respect to which [the child is] interrogated." TEX. R. EVID. 601(a)(2); *Torres*, 424 S.W.3d at 254; *Dufrene*, 853 S.W.2d at 88. "When a party challenges the competency of a child witness, the trial court will consider whether the child witness possesses (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events." *Torres*, 424 S.W.3d at 254. "The third element involves the ability to understand the moral responsibility to tell the truth, to understand the questions posed, and to frame intelligent answers." *Id*. The child need not understand the "obligation of the oath," but the trial court must impress the child with the duty to be truthful. *Id*. (citing *Dufrene*, 853 S.W.2d at

88). "There is no precise age under which the child is deemed incompetent to testify." *Id*.; *see also Fields v. State*, 500 S.W.2d 500, 502–03 (Tex. Crim. App. 1973). Any inconsistent testimony about a specific event might affect the child's credibility, but not her competency. *See Torres*, 424 S.W.3d at 255. And the child's inability to testify to collateral matters does not affect the child's competency. *See id.*

Prior to the first trial of this case, at appellant's request, the trial court conducted a hearing to determine the child's competency to testify. The child was four years and eleven months old at the time of the February 25, 2016 in-camera hearing. The trial judge, the child, the victim advocate from the district attorney's office, and the court reporter were the only people present.

During the in-camera hearing, the child was able to correctly spell her first and last names. When the trial court asked her if she knew the difference between a truth and a lie, she indicated that she did, and she was able to correctly apply this knowledge:

> THE COURT: And we also have the victim advocate from the district attorney's office present, and the court reporter and myself are the only ones here in chambers with me. And I have [the child witness] sitting here with me.
>
> [Witness], do you know difference between a truth and a lie?
>
> THE WITNESS: (Witness nods).
>
> THE COURT: You do?
>
> THE WITNESS: Uh-huh
>
> THE COURT: Okay. What if I said that my shirt—my jacket here was purple? Would that be a truth?
>
> THE WITNESS: No.
>
> THE COURT: No, that wouldn't be the truth, would it? I'd be lying, wouldn't I?
>
> THE WITNESS: Uh-huh.
>
> THE COURT: What if I said [the victim advocate's] sweater there was purple? Would that be the truth?
>
> THE WITNESS: Uh-huh.

THE COURT:  You also know that it's wrong—

THE WITNESS:  Uh-huh.

THE COURT:  —to tell a lie.  Do you understand that?

THE WITNESS:  Uh-huh.

Moreover, the child indicated that she would be able to tell the court if something was not

true, that she knew it was wrong to tell a lie, and she gave examples of what was wrong, as shown

by the following exchange:

> THE COURT:  Okay.  So if I told you that I needed you to make sure that you told the truth, could you do that for me?
>
> THE WITNESS:  (Witness nods).
>
> THE COURT:  Is that yes?
>
> THE WITNESS:  Uh-huh.
>
> THE COURT:  And you'll be able to tell me if something is not true, right?
>
> THE WITNESS:  Uh-huh.
>
> THE COURT:  And you know it's wrong to tell a lie, right?
>
> THE WITNESS:  Uh-huh.
>
> THE COURT:  And you know the difference between right and wrong?
>
> THE WITNESS:  Uh-huh.
>
> THE COURT:  Okay.  Tell me something that you would think would be—that is wrong that you're not supposed to do?
>
> THE WITNESS:  If you do something you're not supposed to do.
>
> THE COURT:  That's a good definition.  That's a good definition.  Good job.  Yeah. Are we supposed to hit other people?
>
> THE WITNESS:  Huh-uh.
>
> THE COURT:  No.  That would be wrong, wouldn't it?
>
> THE WITNESS:  Uh-huh.
>
> THE COURT:  Are we supposed to tell lies?

THE WITNESS:  (Moving head side to side).

THE COURT:  That would be wrong, wouldn't it?

THE WITNESS:  Uh-huh.

THE COURT:  I thank you for talking to me.  I just wanted to make sure you knew the difference between truth and a lie, and you feel like you know the difference, don't you?

THE WITNESS:  Uh-huh.

THE COURT:  All right.  Now, if I were to say that it was snowing inside this room, would that be true or lie?

THE WITNESS:  A lie.

THE COURT:  That would be a lie, wouldn't it?

THE WITNESS:  Uh-huh.

THE COURT:  If I would say that it's daylight outside, what would that be?

THE WITNESS:  A truth.

THE COURT:  All right.  Good.

The trial court stated that it spoke with the child for fifteen or twenty minutes.  Based on their conversation, the trial court found the child was competent to testify; that she understood the difference between a truth and a lie; that she conveyed definitions and examples of both; and that she understood the importance of telling the truth.  Six months later, during an unrelated pre-trial hearing, defense counsel asked the trial court to consider the child's competency as it reviewed the videotape of the child's forensic interview, and the trial court agreed to do so.

Later, just before her testimony during the second trial of this case, the child again stated that she knew the difference between the truth and a lie, and that it was wrong to tell a lie:

THE COURT:  Do you know the difference between telling the truth and telling a lie?

THE WITNESS:  (Moving head up and down)

THE COURT:  Yes.

THE WITNESS:  (Moving head up and down)

THE COURT:  Okay.  And you know when you're up here, you're supposed to tell the truth.  Do you know that?

THE WITNESS:  Uh-huh.

THE COURT:  Can you do that for me?

THE WITNESS:  Yes, sir.

THE COURT:  Just like we talked about last time.

THE WITNESS:  (Moving head up and down).

THE COURT:  You promise me you're going to do that?

THE WITNESS:  Yes, sir.

Appellant offers several arguments for why the trial court erred in finding the child was competent to testify, pointing out that at the in-camera competency hearing the trial court did not ask the child whether she could recall or narrate the events that led to the allegations in this case. Yet, appellant fails to acknowledge that, at his request, the trial court took into account the videotape of the child's forensic interview, and in that interview the child recalled and narrated events that gave rise to the instant allegations.  Indeed, she described specific events involving oral sex and indecent exposure—e.g., that appellant put his penis in her mouth, that he did this on multiple occasions, and that he showed her his penis many times.  Appellant also argues that at trial the child was unable to testify to the essential elements of the offense, and that the evidence establishing the elements of the offense came from the forensic interviewer.  As the State admits, the child's trial testimony that appellant showed her his "private" established only a lesser-included offense of indecency with a child.  Also, the child testified that this happened only once, and when asked if appellant had done anything else to her, the child said no.  Additionally, the child did not remember specific things she told Ramirez, such as describing what appellant's penis looked like, nor did she remember talking to Ramirez.  Although there were differences between what the child

testified to at trial and what she told Ramirez, any differences between the child's trial testimony and what she told Ramirez (or Hoggatt) went only to her credibility, not to her competency. *See Torres*, 424 S.W.3d at 255. Furthermore, although the child could not remember that she had spoken to Ramirez or that she described to Ramirez what appellant's penis looked like, those matters were collateral to her testimony that appellant had exposed his penis to her, and they did not affect her competency to testify. *See id.* At the competency hearing, during her forensic interview, and at trial, the child showed she understood the difference between the truth and a lie, and that she knew it was wrong to tell a lie. And she assured the court that she could tell the truth when she testified.

We conclude the trial court did not err in finding the child was competent to testify. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. 47.2(b)
170499F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHAWN BRADEN, Appellant

No. 05-17-00499-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 15-30110-86-F.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of August, 2018.